## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **CRYSTAL MALVITZ AND CHRISTOPHER FREDRICKSON**, |
| Plaintiffs, |
| v. |
| **FINCANTIERI MARINE GROUP, LLC.** |
| Defendant. |

Civil Action No. 24-cv-238 (TSC)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Crystal Malvitz and Christopher Fredrickson bring this class action, as individuals and on behalf of all others similarly situated, against Defendant Fincantieri Marine Group, LLC ("Defendant"), a company that builds and repairs maritime vessels. Plaintiffs assert claims for negligence, breach of implied contract, and unjust enrichment. Am. Compl., ECF No. 8. Defendant moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. to Dismiss Am. Compl., ECF No. 9-1 ("MTD"). For the reasons set forth below, the court will GRANT in part and DENY in part Defendant's motion.

## I.    BACKGROUND

### A.  <u>Defendant's Cybersecurity Practices and Data Breach</u>

Plaintiffs are Defendant's former employees or benefit recipients. Am. Compl. ¶ 25. They provided personally identifiable information ("PII") to Defendant as a condition of employment and/or employment-related benefits. *Id*. ¶ 2. Defendant allegedly made "promises and representations" that PII would be "kept safe, confidential, and that the privacy of that information

would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it." *Id.* ¶ 28. Defendant's website stated that it stored PII "behind secured networks," only provided access to "a limited number of persons," and "encrypted" PII "via Secure Socket Layer ('SSL') technology." *Id.* ¶ 29. Defendant also represented that it "use[d] regular Malware Scanning" to identify "security holes and known vulnerabilities." *Id.*

On or about April 12, 2023, however, Defendant became "aware of a cyberattack" on its computer systems. *Id.* ¶ 36. It determined that "there was unauthorized access to certain systems . . . between April 6, 2023, and April 12, 2023," resulting in "unauthorized acquisition" of more than sixteen thousand individuals' PII. *Id.* ¶¶ 36, 46. The data stolen during the attack included Plaintiffs' "name[s] . . . date[s] of birth, Social Security number[s], date[s] of service, [insurance] participant ID[s], and member number[s]." *Id.* ¶ 36. Defendant sent a "Notice of Security Incident letter" (the "Notice Letter") to Plaintiffs on January 5, 2024, which offered "24 months of identity monitoring services." *Id.* ¶¶ 36–37, 63, 139, 149.

Plaintiffs allege that, despite Defendant's "promises and representations," *id.* ¶ 28, it failed to implement "reasonable security procedures and practices" to prevent or promptly detect the cyberattack and stored data in unencrypted files, *id.* ¶¶ 37–40, 67. Plaintiffs contend that Defendant's practices did not comply with the Federal Trade Commission's ("FTC") guidelines for protecting personal information, such as using "an intrusion detection system" to promptly identify a breach, monitoring suspicious activity or large data transmissions, developing a data-breach response plan, "properly dispos[ing] of [PII] that is no longer needed," limiting "access to sensitive data[,]" using "industry-tested methods for security[,]" and verifying the security measures used by third-party service providers. *Id.* ¶¶ 81–83, 86. Plaintiffs also allege that Defendant "failed to follow [] industry best practices," such as "strong passwords;" "firewalls,

antivirus, and anti-malware software; encryption, making data unreadable without a key; multifactor authentication; backup data and limiting which employees can access sensitive data." *Id.* ¶ 90.  According to Plaintiffs, Defendant knew or should have known that their PII "would be targeted by cybercriminals" because data breaches are "widespread" and a dark web marketplace exists for PII, particularly social security numbers.  *Id.* ¶¶ 41, 56–60, 69–73.  Plaintiffs also challenge Defendant's response to the cyberattack because the Notice Letter failed to disclose the "root cause" of the breach or "the remedial measures" taken to prevent another breach. *Id.* ¶¶ 37–39.

**B.  Plaintiffs' Alleged Injuries**

Plaintiffs claim that, as a result of Defendant's insufficient cybersecurity practices and the data breach, they suffered "actual injuries and damages." *Id.* ¶ 94.  Specifically, "(i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vi) statutory damages; [and] (vii) nominal damages." *Id.*

Malvitz and Fredrickson each identify their own harms.  Malvitz receives benefits from Defendant because her spouse is a current employee.  *Id.* ¶ 135.  In general, she is "very careful about sharing her sensitive" information and "never knowingly" provides her unencrypted PII over the internet. *Id.* ¶ 137.  Defendant obtained and retained her PII in connection with "employment-related benefits." *Id.* ¶ 135.  After receiving the Notice Letter, she experienced "an increase in spam calls, texts, and/or emails." *Id.* ¶¶ 139, 142.  She took steps to mitigate the harms from the data breach, such as monitoring her accounts and purchasing mitigation tools. *Id.* ¶¶ 139–40.  She claims she has suffered "fear, anxiety, and stress . . ." from the increased exposure of her PII. *Id.* ¶ 142–44.

Fredrickson worked for Defendant intermittently from 2016 to 2023. *Id.* ¶ 147. He was very "cautious" and "careful about sharing his PII." *Id.* ¶ 153. After he received the Notice Letter, he "suffered actual fraudulent misuse of his PII." *Id.* ¶¶ 149–51. On or around April 18, 2024, "third party criminal actors" used his credit card for a "fraudulent purchase of $1,145.13 . . ." *Id.* ¶ 151. Fredrickson had to acquire "a new credit card" and "anticipates spending considerable time and money" to monitor his accounts and address any future harms. *Id.* ¶¶ 151–152, 158. Frederickson alleges that, as a result of the data breach, he "suffered injury from a loss of privacy" and "fear, anxiety, and stress." *Id.* ¶¶ 155–159.

## C. <u>Procedural History</u>

Malvitz filed the Complaint on January 26, 2024, and amended as of right on May 2, 2024. ECF Nos. 2, 8. Fredrickson "voluntarily dismissed" a separate class action that he had filed against Defendant and joined as a named Plaintiff in the Amended Complaint. MTD at 3 (citing *Fredrickson v. Fincantieri Marine Grp., LLC*, Case No. 1:24-cv-0037-TSC (D.D.C. Feb. 7, 2024), ECF No. 1). Plaintiffs sue on behalf of themselves and a nationwide class of individuals, pursuant to Federal Rule of Civil Procedure 23. Am. Compl. ¶ 164. Plaintiffs proposed class definition is: "All individuals in the United States whose PII was impacted as a result of the Data Breach announced by Defendant in January 2024." *Id.* Plaintiffs have not yet moved for class certification. Their Amended Complaint asserts claims for negligence, breach of implied contract, and unjust enrichment stemming from Defendant's failure to protect Plaintiffs' PII. *Id.* ¶¶ 176–241. Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. MTD at 1.

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *See Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004). The law presumes that "a cause lies outside [the court's] limited

jurisdiction" unless the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799)).  When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F. 3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).

A motion under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To survive, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* (citing. *Twombly*, 550 U.S. at 555).  While the court must assume that any "well-pleaded factual allegations" in a complaint are accurate, conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679.

## III.    ANALYSIS

### A.  <u>Standing</u>

Article III of the Constitution confines federal judicial power to the resolution of "Cases" and "Controversies." *TransUnion LLC v. Ramirez*, 594 U.S. ---, ---, 141 S.Ct. 2190, 2203 (2021) (citing *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997)).  For there to be a case or controversy under

Article III, the plaintiff must have a "personal stake" in the case—in other words, standing. *Raines*, 521 U.S. at 819. Standing is a necessary predicate to any exercise of federal jurisdiction and, without standing, the court lacks jurisdiction. *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 129 (2011); *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012). To demonstrate standing at the motion to dismiss stage, a plaintiff must plausibly plead (1) an "injury in fact," that is (2) "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and that is (3) "likely" to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Jeffries v. Volume Servs. Am., Inc.*, 982 F.3d 1059, 1063 (D.C. Cir. 2019).

Defendant argues that Plaintiffs' alleged injuries—the diminution in PII value, loss of the benefit of the bargain, increased spam, and future risks of harm—are "common injuries" that do not qualify as a concrete, particularized, and actual or imminent for standing purposes. MTD at 5–8, 10–13. And, even if the fraudulent purchase on Fredrickson's credit card constitutes an injury in fact, Defendant argues it is not "fairly traceable" to Defendant. *Id.* at 9.

### 1. Injury in Fact

An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized,' and . . . 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc., v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). Tangible harm, such as a physical or monetary injury, readily qualifies as concrete under Article III. *TransUnion*, 141 S.Ct. at 2204. When evaluating intangible harm, courts "should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American Courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* (citing *Spokeo*, 578 U.S. at 341). Because Plaintiffs seek

prospective, injunctive relief, they must also establish "material risk of future harm" that is "sufficiently imminent and substantial." *Id.* at 2210 (citations omitted).

Defendant argues that Plaintiffs' "mere increased risk of identity theft and mitigation efforts are insufficient." MTD at 10. The court disagrees. The D.C. Circuit has determined that "identity theft . . . constitute[s] a concrete and particularized injury." *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 55 (D.C. Cir. 2019) (quoting *Attias v. Carefirst Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017) ("*Attias I*")). Spending financial resources or time on mitigation efforts in "response to a data breach . . . may create a concrete Article III injury when paired with a risk of future identity theft." *Attias v. Carefirst Inc.*, 344 F.R.D. 38, 47 (D.D.C. 2023) ("*Attias III*"). Both Plaintiffs adequately allege such mitigation measures. For instance, Malvitz spent time "monitoring her financial accounts for any indication of fraudulent activity," and Fredrickson pursued similar "mitigation measures." Am Compl. ¶¶ 134–162; *see Keown v. Int'l Ass'n of Sheet Metal Air Rail Trans. Workers*, No. 23-cv-3570 (CRC), 2024 WL 4239936, at *3 (D.D.C. Sept. 19, 2024).

The court further agrees that Plaintiffs have shown that "their harm has a close relationship to the harm to privacy vindicated by the common-law tort of intrusion upon seclusion." *All. for Retired Ams. v. Bessent*, --- F. Supp. 3d ----, 2025 WL 740401, at *15–16 (D.D.C. Mar. 7, 2025). Intrusion upon seclusion at common law requires that the "defendant intentionally intruded 'upon the solitude or seclusion of another or [their] private affairs or concerns,'" and that the intrusion would be "highly offensive" to a reasonable person. *Id.* at *16 (quoting Restatement (Second) of Torts § 652B). Publicity is not required. *Pileggi v. Washington Newspaper Publ'g Co., LLC*, No. CV 23-345 (BAH), 2024 WL 324121, at *6 (D.D.C. Jan. 29, 2024); *see* Restatement (Second) of Torts § 652B. The harm need not perfectly align with the common law action. Courts "look for a

close relationship" to a traditional harm, "not an exact duplicate." *All. for Retired Ams*., 2025 WL 740401, at *17 (internal quotation marks and citations omitted). At the pleading stage, Plaintiffs have set forth sufficient facts for the court to infer that a reasonable person would find it offensive that a third party obtained Plaintiffs' "private and personal details,", such as social security numbers. *Pileggi*, 2024 WL 324121, at *8 (internal quotation marks and citation omitted). Therefore, Plaintiffs satisfy the injury in fact requirement for standing.

### 2. Causation

Causation or traceability requires that Defendant is responsible for Plaintiffs' injury. *See Lujan*, 504 U.S. at 560–61. The injury must be fairly traceable "to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Citizens for Resp. and Ethics in Wash. v. U.S. Dep't of Treasury*, 21 F.Supp.3d 25, 34 (D.D.C. 2014) (quoting *Lujan*, 504 U.S. at 560). Defendant argues that Plaintiffs' injuries "are not plausibly connected" to the data breach, MTD at 4, and any injuries suffered by Plaintiffs stem from "unknown cybercriminal[s]," which breaks the causal chain, Def.'s Reply in Support of MTD at 2, ECF No. 11 ("Def.'s Reply"). This argument is unavailing.

At the motion to dismiss stage, Plaintiffs need only "show that injuries claimed—substantial risk of identity theft and Plaintiff's [] mitigation measures—are 'fairly traceable' to the data breach." *Keown*, 2024 WL 4239936, at *3 (citing *Attias I*, 865 F.3d at 629). Plaintiffs allege that Defendant failed to "implement adequate and reasonable security procedures and protocols." Am Compl. ¶ 7. They claim that because Defendant lacked sufficient cybersecurity protections, third parties accessed Defendant's systems, accessing Plaintiff's PII, during the data breach. *Id.* ¶ 36. As a result of the data breach, Plaintiffs spent time and money on mitigation efforts and face increased risks of financial fraud or identity theft. *Id.* ¶¶ 139–44, 149–59. The allegations

sufficiently establish that Plaintiffs' harms are fairly traceable to Defendant's inadequate security measures. *See Keown*, 2024 WL 4239936, at *3.

### 3. Redressability

To satisfy redressability, Plaintiffs must allege that it is "substantially likely" they will "obtain relief that directly redresses the injury suffered." *Reed v. Goertz*, 598 U.S. ---, ---, 143 S. Ct. 955, 960 (2023). Courts may award damages for mitigation costs incurred because of a "substantial risk that a harm will occur." *Attias I*, 865 F.3d at 629 (quoting *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 414 n.5 (2013)). Plaintiffs assert that they "anticipate[] spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach." Am. Compl. ¶¶ 144, 158. Engaging in such mitigation efforts was reasonable following the data breach. *See Attias I*, 865 F.3d at 629. "The fact that plaintiffs have reasonably spent money to protect themselves against a substantial risk creates the potential for them to be made whole by monetary damages." *Id.*

In addition to compensatory damages, Plaintiffs seek "injunctive relief, including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant." Am. Compl. ¶ 16. Defendant argues the court cannot redress Plaintiff's "purported future risk of harm" because it "cannot control the actions of unknown cybercriminals or compel [Defendant] to modify its cybersecurity defenses to address a data breach that has already occurred." Def.'s Reply at 1. But that is not the injunctive relief Plaintiffs seek; rather, they ask for injunctive relief to prevent a future data breach and to address ongoing harms from the past data breach. *See* Am. Compl. ¶¶ 16, 134. They allege that their PII "remain[s] in Defendant's possession" and "subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII." *Id.* ¶ 208. The

court may redress the "'substantial risk' that their personal information will be stolen from [Defendant] again in the future." *Keown*, 2024 WL 4239936, at *4.

Courts also recognize that "nominal damages suffice for redressability purposes because American courts always have recognized that plaintiffs may pursue constitutional or common-law causes of action even when their only redress is the symbolic award of nominal relief." *Attias v. CareFirst, Inc.*, 346 F.R.D. 1, 9–10 (D.D.C. 2024) ("*Attias V*") (citing *Uzuebunam v. Preczewski*, 592 U.S. ---, ---, 141 S.Ct. 792, 801 (2021)).  Because Plaintiffs request nominal damages, and other forms of relief, redressability is satisfied.

For the above reasons, Plaintiffs sufficiently allege an injury in fact caused by the Defendant and redressable by the court, and therefore have standing.

## B.  <u>Choice of Law</u>

In addition to the constitutional limitations imposed by Article III, Congress further limits the types of cases or controversies that district courts may hear.  Federal district courts typically derive jurisdiction from two statutory grants: federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction, *id.* § 1332.  Here, Plaintiffs bring common-law claims based on diversity jurisdiction over actions where the amount in controversy exceeds $5,000,000 and there is minimal diversity between the named parties pursuant to the Class Action Fairness Act of 2005.  Am. Compl. ¶¶ 18–21; 28 U.S.C. § 1332(d).  When exercising diversity jurisdiction, the court must determine the law that applies to common-law claims.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Courts "must apply the choice-of-law rules of the jurisdiction in which [it] sit[s]. . ." *Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014).  "D.C. choice-of-law rules require that" the court applies "the tort law of the jurisdiction that has the 'most significant relationship' to the dispute."  *Id.* (citing *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006)).  In determining which law applies, the court considers (1) "where the injury occurred," (2)

"where the conduct causing the injury occurred," (3) "the domicile . . . of the parties," and (4) "the place where the relationship is centered." *Id.* (quoting *Washkoviak*, 900 A.2d at 180) (internal quotation marks omitted).  Federal courts in this district must "first determine whether a 'true conflict' exists between the laws of the competing jurisdictions." *Jones v. Lattimer*, 29 F. Supp. 3d 5, 10 (D.D.C 2014) (quoting *Margolis v. U-Haul Int'l, Inc.*, 818 F. Supp 2d 91, 100 (D.D.C. 2011)).  A "true conflict exists" when "more than one jurisdiction has a potential interest in having its law applied" and "the law of the competing jurisdictions is different." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51–52 (D.C. Cir. 2014) (citation omitted).  In such a situation, D.C. law applies "unless the foreign state has a greater interest in the controversy." *Jones*, 29 F. Supp. 3d at 10.

Because Plaintiffs are Wisconsin citizens and Defendant is a D.C. citizen, Am. Compl. ¶¶ 18–21, Wisconsin and D.C. may have an interest in the matter.  "Wisconsin has a powerful interest in protecting its residents from fraud and misrepresentation, while the District of Columbia has an equally strong interest in ensuring that its corporate citizens refrain from fraudulent activities." Pls.' Resp. to Def.'s MTD at 14, ECF No. 10 ("Opp'n") (quoting *Washkoviak*, 900 A.2d at 180–81).  The parties agree, however, that the court cannot conduct an adequate choice-of-law analysis at the motion to dismiss stage, and neither party fully briefed the choice-of-law issues.  MTD at 13; Opp'n at 13–14.  Defendant argues that Plaintiffs' claims fail under either jurisdiction's standards, but urges the court to consider and "afford[] significant weight" to Wisconsin law.  Def.'s Reply at 5–9 & n.2.

In general, choice-of-law issues are "'better suited to resolution on motions for summary judgment,' after an opportunity for discovery." *Jones*, 29 F. Supp. 3d at 10 n.3 (quoting *La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya,* 477 F. Supp. 2d 131, 137 (D.D.C.

2007)).  The court will benefit from fulsome briefing before resolving whether Wisconsin or D.C. law applies.  *See id.*; *In re McCormick & Co.*, 215 F. Supp. 3d 51, 62 (D.D.C. 2016).  Because it "cannot determine from the pleadings which jurisdiction has a greater interest in the controversy"—as the parties concede—"in ruling on a motion to dismiss [the court] must apply the law of the forum state, which in this case is the District of Columbia."  *Washkoviak*, 900 A.2d at 182; *see also Wu*, 750 F.3d at 949; *In re APA Assessment Fee Litig.*, 766 F.3d at 54–55. Therefore, at this juncture, the court will assess Plaintiffs' claims under D.C. law.

## C.  <u>Negligence</u>

Defendant moves to dismiss all counts in Plaintiffs' Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Starting with the negligence claim, to survive a motion to dismiss, Plaintiffs must allege "(1) the existence of a duty owed by the defendant to the plaintiff, (2) a negligent breach of that duty by the defendant, and (3) an injury to the plaintiff (4) proximately caused by the defendant's breach."  *Hawkins v. Wash. Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 105 (D.D.C. 2018) (quoting *Powell v. District of Columbia*, 602 A.2d 1123, 1133 (D.C. 1992)).

### 1.  **Duty and Breach**

"The foundation of modern negligence law is the existence of a duty owed by the defendant to the plaintiff."  *N.O.L v. District of Columbia*, 674 A.2d 498, 499 n.2 (D.C. 1995) (citing *Palsgraf v. Long Island R.R.,* 248 N.Y. 339 (N.Y. 1928)).  Plaintiffs identify several potential duties that Defendant owed them: (1) a common-law duty to use "reasonable care to secure and prevent disclosure" of Plaintiff's PII information; (2) a statutory duty under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, to "employ reasonable security measures"; (3) a duty of care arising from the "special relationship" between Plaintiffs, as employees or recipients of employment-related benefits; and (4) a duty to follow "industry standards to protect [] PII."  Am

Compl. ¶¶ 181–90.  Plaintiffs allege sufficient facts for the court to infer that Defendant owed (and breached) a common-law duty of care to secure and prevent disclosure of Plaintiffs' PII.  Plaintiffs' alternative theories—statutory obligations, special relationship, and industry standards—support their breach allegations, but do not impose an independent duty giving rise to a negligence claim.

In general, "one has a duty to guard against only foreseeable risks."  *Novak v. Cap. Mgmt. & Dev. Corp.*, 452 F.3d 902, 911–12 (D.C. Cir. 2006) (citation omitted).  Under D.C. law, the relationship between the parties determines "the foreseeability of the plaintiff's injury and, ultimately, the scope of the defendant's duty."  *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 794 (D.C. 2011).  For "a party who is at arms' length," there is "only a minimal duty" of care.  *Id.*  Once the parties enter into a relationship, however, a defendant must exercise the degree of care corresponding to the relationship.  *Id.*  If the asserted injury results from intervening criminal acts of a third party, a heightened showing of foreseeability is required.  *See Bd. of Trs. of Univ. of D.C. v. DiSalvo*, 974 A.2d 868, 871 (D.C. 2009).  And in "some circumstances under District of Columbia law [] even a failure to act will give rise to a legal duty."  *Attias v. Carefirst*, 365 F. Supp. 3d 1, 20 (D.D.C. 2019) ("*Attias II*"), *on reconsideration in part*, 518 F. Supp. 3d 43 (D.D.C. 2021).

Plaintiffs sufficiently allege that Defendant owed and breached a common-law duty of care owed to Plaintiffs.  Defendant acquired Plaintiffs' PII as a condition of employment and receiving employment-related benefits.  Am Compl. ¶ 48.  In doing so, Defendant assumed a duty to take reasonable care with Plaintiffs' PII.  *See Collier v. District of Columbia*, 46 F. Supp. 3d 6, 15 (D.D.C. 2014) (referencing heightened duty for "employer and employee" relationship); *Keown*, 2024 WL 4239936, at *8.  Defendant allegedly breached this duty by failing to implement reasonable safeguards to "protect their [] PII from reasonably foreseeable threat of a cyberattack

and data breach." Am Compl. ¶ 182.  Plaintiffs allege that Defendant knew or should have known that "unprotected or exposed PII" is "valuable and highly sought after by nefarious third parties seeking to illegally monetize" stolen PII.  *Id.* ¶ 57.  Based on the "known high frequency of [] data breaches targeting employers in possession of PII," a cyberattack was foreseeable.  *Id.* ¶¶ 196. Plaintiffs claim Defendant failed to guard against this reasonably foreseeable risk by not taking adequate security measures, including following the "industry standards for an employer's obligations to its employees and their beneficiaries with respect to data privacy," FTC guidelines for data security practices, and Microsoft Protection Intelligence to prevent and detect data breaches.  *Id.* ¶¶ 42–45, 80, 93.

Accepting these allegations as true, the court finds that Plaintiffs have sufficiently established that a cyberattack was foreseeable based on Defendant's inadequate security practices, the value of Plaintiffs' PII, and the prominence of identity thefts and data breaches.  *See In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d at 55–56 (citing *Attias I*, 865 F.3d at 622, 628–29).  To the extent Defendant's security measures would violate the FTC Act or fall short of industry standards, such allegations support Plaintiffs' claim of breach.  *Keown*, 2024 WL 4239936 at *9.  Thus, Plaintiffs have plausibly alleged Defendant owed and breached a duty.

### 2.  Causation and Injury

Plaintiffs must identify "more than speculative harm from defendant's allegedly negligent conduct."  *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 708 (D.C. 2009) (quoting *In re Estate of Curseen v. Buchanan Ingersoll, P.C.*, 890 A.2d 191, 194 (D.C. 2006)).  "Threat[s] of future harm," which have not materialized, "do[] not suffice to create a cause of action for negligence."  *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 573 (D.C. 2011) (quoting *Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C. 1989)).  In the data breach context, a plaintiff may

satisfy injury in fact for Article III standing but fail to meet the injury threshold to state a negligence claim. *See Attias II,* 365 F. Supp. 3d at 9. Here, Plaintiffs allege several harms: (1) mitigation costs and heightened risk of PII misuse, (2) lost or diminished value of PII, (3) invasion of privacy, (4) emotional distress, and (5) statutory or nominal damages. Am Compl. ¶¶ 6, 141, 206–07.

          i.   *Mitigation Costs and Heightened Risk of Misuse*

"The District of Columbia Court of Appeals has expressly declined to treat an increased risk of future identity theft" and "time and money spent protecting against future identity theft" as damages for negligence claims based on data breaches. *See Attias II,* 365 F. Supp. 3d at 11, 14 (quoting *Randolph,* 973 A.2d at 708–09); *Keown,* 2024 WL 4239936, at *9. Allegations of actual misuse or economic injury, not speculations as to future misuse or economic harms, are sufficient, however. *Attias II,* 365 F. Supp. 3d at 11, 14 ("Only the [plaintiffs]—who. . . have alleged actual misuse in the form of tax-refund fraud—would be able to recover consequential damages like the money spent monitoring their credit."); *Keown,* 2024 WL 4239936, at *9.

Applying that rule here, the court finds that Fredrickson alleges "actual fraudulent misuse of his PII." Am. Compl. ¶ 151. He claims that after the data breach, "third party criminal actors used [his] PII to initiate a fraudulent purchase of $1,145.13 [] on his credit card." *Id.* As a result, Fredrickson had to obtain a new credit card and spent "considerable time and money" to mitigate the ensuing harms. *Id.* ¶¶ 152, 158. The fraudulent charge on his card and costs associated with remedying the misuse of his PII qualify as damages. *Attias II,* 365 F. Supp. 3d at 11, 14. The court may also plausibly infer a causal connection between Defendant's negligence and Fredrickson's injury. Fredrickson alleges that he is "very careful about sharing his sensitive PII" and "has never knowingly transmitted unencrypted sensitive PII over the internet or any other

unsecured source." Am. Compl. ¶ 153. After his PII—including his social security number—was stolen during the data breach, he received fraudulent credit card charges. *Id.* ¶¶ 152–58. At the motion to dismiss stage, these facts permit a plausible inference that Defendant's inadequate security measures caused the data breach, which then caused Fredrickson's injury. *Attias II*, 365 F. Supp. 3d at 11 n.4 (Even without "specific facts connecting the two events," court "plausibly inferred" causation "when considering a motion under Rule 12(b)(6).").

Malvitz's allegations present a closer question. She does not allege any specific fraudulent charges, but claims she suffered "an increase in spam calls, texts, and/or emails" and spent "valuable time" on mitigation activities. Am Compl. ¶¶ 140–43. The question is whether "spam calls, texts, and/or emails," *id.* ¶ 142, constitute a "present injury," rather than "anticipation of future injury that has not materialized," *Randolph*, 973 A.2d at 708. At least one court in this district has answered yes. In *Keown*, the court concluded that "an increase in spam, calls, texts, and/or emails" and time "dealing with these effects . . . is much closer to [a] present injury to [Plaintiff's] PII than to efforts to mitigate potential future harm." 2024 WL 4239936, at *10. Therefore, the plaintiff alleged an actual injury sufficient to support a negligence claim under D.C. law. *Id.* (citing *Guo Wengui v. Clark Hill, PLC*, 440 F. Supp. 3d 30, 37 (D.D.C. 2020)); *see also Attias II*, 365 F. Supp. 3d at 11 (Allegations "listing what 'identify thieves' 'can' or 'may' do" with PII are insufficient, but actual misuse permits recovery for mitigation efforts). Although it is a close question, the court reaches the same conclusion at this stage. Because Malvitz alleges actual misuse through "increased spam calls, texts, and/or emails," Am. Compl. ¶ 142, she alleges an actual injury sufficient to state a negligence claim.

ii.    *Lost or diminished value of PII*

Plaintiffs' allegations that they suffered damages for lost or diminished value of their PII cannot sustain a negligence claim.  When addressing injury in fact for Article III standing, courts have "routinely rejected the proposition that an individual's personal identifying information has an independent monetary value."  *See, e.g.*, *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) (collecting cases).  Plaintiffs allege that "an active and robust legitimate marketplace for PII exists," but fail to plead facts showing how the unauthorized access to their PII diminishes its value. Am. Compl. ¶¶ 116–19, 120.    To  the  contrary,  Plaintiffs  allege  the  information compromised in the data breach remains particularly valuable.  *Id.* ¶ 121.  Moreover, they do not assert that they intended to sell their PII or participate in the marketplace.  Without allegations that "their  personal  information  became  less  valuable  as  a  result  of  the  [data]  breach  or  that  they attempted to sell their information and were rebuffed because of a lower price-point attributable to the breach," Plaintiffs fail to allege damages based on a change in value.  *Welborn*, 218 F. Supp. 3d at 78; *see also Keown*, 2024 WL 4239936, at *10 (Even though Plaintiff's PII "decreased in 'rarity,'" they did not claim that they intended to "sell [the] information on the black market in the first place, so it is uncertain how they were injured by this alleged loss.").

iii.    *Invasion of Privacy*

Invasion of privacy is a distinct intentional tort, which Plaintiffs do not assert, but a loss of privacy "may constitute 'damage to the interests of the plaintiff' sufficient to support a claim of negligence if the defendant has a duty to prevent such damage."  *Keown*, 2024 WL 4239936, at *10 (citing *District of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C. 1984)).  PII must be disclosed to a third party to establish an invasion of privacy, however.  *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 29 (D.D.C. 2014).  "[C]onduct giving

rise to the unauthorized viewing of [PII] such as plaintiff's Social Security number . . . can constitute an intrusion . . ." *Randolph*, 973 A.2d at 710; *see also Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 587 (D.C. 1985) ("[I]nvasion of privacy 'represents a vindication of the right to private personality and emotional security." (citation omitted)).   Here, Plaintiffs plausibly allege that third parties obtained unauthorized access to their PII, which Defendant had a duty to safeguard.  *See supra* Section III.C.1.   The third parties "accessed and obtained" Plaintiffs' PII, including their names, dates of birth, Social Security numbers, dates of service, insurance participant IDs, and member numbers.  Am. Compl. ¶¶ 4, 139, 149.  Disclosure of such information constitutes an "actual harm to [Plaintiffs'] interest in privacy. . . both judicially cognizable and recognized at common law."  *Keown*, 2024 WL 4239936, at *11.

      iv.   *Emotional Distress*

Plaintiffs' emotional distress allegations also support their negligence claim.  Plaintiffs may "recover for pain and suffering as 'parasitic' damages as a result of or incident to the 'invasion of another legally protected interest.'"  *Attias II*, 365 F. Supp. 3d at 16 (quoting *Hedgepeth*, 22 A.3d at 809).  If a plaintiff seeks only damages for mental pain and suffering, they must satisfy either the zone of physical danger rule or "the special relationship and undertaking rule." *Id.* (citations omitted).  Here, Plaintiffs allege an increase in "fear, anxiety, and stress" because of the data breach.  Am Compl. ¶¶ 142, 157.  Their distress "stems from the invasion of another legally protected interest," privacy, so they may seek "parasitic" damages.  *Keown*, 2024 WL 4239936, at *11 (citation omitted).   Because Plaintiffs' injuries are "neither purely economic nor purely emotional," they need not satisfy the alternative paths to recover emotional distress damages.  *Id.*

v.    *Economic Loss Doctrine*

Defendant argues that the economic loss doctrine bars Plaintiffs' recovery in negligence. MTD at 14–15.  That doctrine precludes recovery for purely economic losses in tort, unless a special relationship exists.  *Attias II*, 365 F. Supp. 3d at 17; *see also Aguilar v. RP MRP Wash. Harbour, LLC*, 98 A.3d 979, 985–86 (D.C. 2014) ("The economic loss doctrine in the District of Columbia bars recovery of purely economic losses in negligence, subject to only one limited exception where a special relationship exists.").  Plaintiffs do not seek purely economic losses.  As explained, Plaintiffs adequately allege harm to their privacy interests and emotional distress damages, in addition to economic losses from mitigation efforts.

For the reasons stated above, Plaintiffs state a negligence claim and the court will deny Defendant's motion to dismiss Count I.

**D.  <u>Breach of Implied Contract</u>**

Defendant contends that Plaintiffs' claim fails because they "fail to plead the necessary elements"—offer, acceptance, and consideration—for a valid contract governing Plaintiffs' PII. MTD at 17–19.  The court disagrees.  Under D.C. law, "an implied-in-fact contract contains 'all necessary elements of a binding agreement,' differing from other contracts 'only in that it has not been committed to writing' and is instead 'inferred from the conduct of the parties.'"  *Shaffer v. George Wash. Univ.*, 27 F.4th 754, 762 (D.C. Cir. 2022) (quoting *Camara v. Mastro's Rests. LLC*, 952 F.3d 372, 375 (D.C. Cir. 2020)).  "To *prevail* on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach."  *Molock v. Whole Foods Market, Inc.*, 297 F. Supp. 3d 114, 131 (D.D.C. 2018) (quoting *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015)); *see also Paul v. Howard Univ.*, 754 A.2d 297, 311 (D.C. 2000) (citation omitted).  To survive a motion to dismiss, however, "it is enough for the plaintiff to describe the

terms of the alleged contract and the nature of the defendant's breach." *Molock*, 297 F. Supp. 3d at 131 (quoting *Francis*, 110 A.3d at 620).

Courts have found that where there is no history, course of dealing, or series of statements to support a contractual relationship, there can still be a "contractual duty to take reasonable measures to secure customer PII." *Attias v. CareFirst, Inc.*, No. 15-CV-882 (CRC), 2023 WL 5952052, at *6 (D.D.C. Sept. 13, 2023) ("*Attias IV*"). In both *Attias* and *Keown*, courts found implied contract claims where privacy notices or practices were provided or accessible to plaintiffs. *See Attias IV*, 2023 WL 5952052, at *6–7; *Keown*, 2024 WL 4239936, at *13. Such notices included assurances that the defendant took steps to protect PII. *Attias IV*, 2023 WL 5952052 at *6–7. Plaintiffs identify similar assurances by Defendant in this case, specifically, Defendant's "Privacy Policy" and website representations. Am Compl. ¶¶ 29, 220; Opp'n at 21. Defendant's website stated that

> Our website is scanned on a regular basis for security holes and known vulnerabilities in order to make your visit to our site as safe as possible. We use regular Malware Scanning. Your personal information is contained behind secured networks and is only accessible by a limited number of persons who have special access rights to such systems, and are required to keep the information confidential. In addition, all PII/information you supply is encrypted via Secure Socket Layer (SSL) technology. We implement a variety of security measures when a user submits, or accesses their information to maintain the safety of your personal information. All transactions are processed through a gateway provider and are not stored or processed on our servers.

Am. Compl. ¶ 29 (formatting modified).

Defendant's website "speaks to an obligation to take affirmative steps to 'protect' [Plaintiffs] PII." *Attias IV*, 2023 WL 5952052, at *7. Further, Plaintiffs allege that Defendant required them to provide their PII in order to obtain benefits. Am. Compl. ¶ 213. They claim that, in doing so, Defendant implicitly "agreed" to "reasonably safeguard" the information from "unauthorized access or disclosure." *Id.* ¶ 219. Drawing all inferences in Plaintiffs' favor, that

assumption is reasonable. *See Keown*, 2024 WL 4239936 at *13 ("[I]t is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security or other sensitive personal information would not imply the recipients assent to protect the information sufficiently." (citing *Attias IV*, 2023 WL 5952052 at *6–7)). Therefore, Plaintiffs adequately state the key contract terms.

Turning to the second requirement—breach—Plaintiffs need only identify the nature of the alleged breach. *Molock*, 297 F. Supp. 3d at 131. They claim that Defendant breached by failing to "take adequate cybersecurity measures" to safeguard their PII and storing the data in unencrypted files. Am. Compl. ¶ 67. Accepting these allegations as true, the court finds that Plaintiffs' breach of implied contract claim survives, and it will deny Defendant's motion to dismiss Count II.

**E.  Unjust Enrichment**

Finally, Defendant moves to dismiss Plaintiffs' unjust enrichment claim, arguing that Plaintiffs do not plausibly allege that they provided anything in exchange for data security or that Defendant retained any benefit unjustly. MTD at 23–25. Unjust enrichment "rests on a contract implied in law," which permits recovery "in the absence of any contract, actual or implied in fact." *United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 247 (D.C. Cir. 1996), (citing *Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C. Cir. 1973)). It requires that "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78, 101 (D.D.C. 2020) (quoting *News World Commc'ns, Inc. v. Thompson*, 878 A.2d 1218, 1222 (D.C. 2005)). Plaintiffs cannot recover under both unjust enrichment and breach of contract theories, but appropriately plead this claim in the alternative. *See* Fed. R. Civ. P. 8(a)(3); *Shaffer*, 27 F.4th at 768.

Plaintiffs fail to state a claim for unjust enrichment. They allege that they "conferred monetary benefit on Defendant by providing [] their PII and [] labor" and that Defendant saved money on security costs and unjustly enriched itself by profiting from Plaintiffs' work. Am. Compl. ¶¶ 232–235. This falls short of unjust enrichment. First, Plaintiffs fail to allege that Defendant derived any benefit or value from Plaintiffs' PII. There is no assertion that Defendant ran analytics on Plaintiffs' PII or used it for an independent business purpose. MTD at 14 n.4. Rather, Defendant required Plaintiffs' PII as a condition of employment and to provide employment-related benefits. Am. Compl. ¶ 48. Second, Defendant did not unjustly benefit from Plaintiffs' labor. Malvitz was not Defendant's employee but received benefits as an employee's spouse. *Id.* ¶ 135. Therefore, she did not provide Defendant with any labor. Although Fredrickson worked for Defendant, *id.* ¶ 147, he received a salary, and therefore Defendant did not unjustly retain the benefit of his labor. The Complaint "does not identify any profit reaped by [Defendant] that is attributable to use of Plaintiff's data, nor does it allege that Plaintiffs gave [Defendant] any money that should have been used for data security." *See Keown*, 2024 WL 4239936, at *14. Therefore, the court will dismiss Plaintiffs' unjust enrichment claim.

## IV.    CONCLUSION

For the foregoing reasons, the court will DENY Defendant's motion to dismiss Plaintiffs' negligence and breach of contract claims, but GRANT Defendant's motion as to Plaintiffs' unjust enrichment claim. An Order shall accompany this Opinion.


Date: June 12, 2025


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge